## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LORENZO OLIVER,** | **Civil Action No. 14-1334 (MCA)** |
| **Petitioner,** | |
| **v.** | **OPINION** |
| **ANGEL L. SANTIAGO,** **ADMINISTRATOR, ET AL.,** | |
| **Respondents.** | |

## I.   <u>INTRODUCTION</u>

This matter has been opened to the Court by Petitioner Lorenzo Oliver's filing of a pro se

Petition for a writ of habeas corpus challenging his civil commitment under the New Jersey

SVPA, pursuant to 28 U.S.C. § 2254.  For the reasons explained in this Opinion, the Court will

deny the Petition and will also deny a certificate of appealability.

## II.   <u>FACTUAL BACKGROUND & PROCEDURAL HISTORY</u>

This Court, affording the state court's factual determinations the appropriate deference,

*see* 28 U.S.C. § 2254(e)(1),[1] will reproduce the recitation of facts as set forth by Superior Court

of New Jersey, Appellate Division:

> L.O. is a fifty-eight-year-old convicted sexual molester of women.
> He has a longstanding history of sexual offenses. In 1971, at age
> sixteen, L.O. was arrested for the rape of a thirteen-year-old girl.
> The charge was amended to immorality, and he was adjudicated

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

~~delinquent and sentenced to a suspended sentence at Yardville and~~
one year probation. L.O. claims the intercourse was consensual.

At age eighteen, L.O. was convicted of assault with intent to commit carnal abuse for attempting to engage in sexual activity with a nine-year-old female he was instructing in karate. He was sentenced to a maximum term of seven years at Yardville. He was arrested two times for sexual offenses in 1973 and 1978 that were dismissed, and in l980 he was charged with aggravated sexual assault for which he was found not guilty. However, Dr. Mark Frank, a clinical psychologist, reported in a 1989 Adult Diagnostic and Treatment Center (ADTC) evaluation that L.O. told him this incident involved a female acquaintance who at first resisted his advances but later submitted to sex. According to the report, L.O. told the evaluator, "I admit we struggled. I guess she thought it was rape, but it wasn't my definition." At the SVPA trial L.O. denied making that statement.

In 1981, L.O. forced two girls, ages fourteen and sixteen, into his car. He drove them around for several hours and eventually stopped and demanded sex, which they refused. After he pulled the younger girl from the car, the older girl escaped. When police arrived, they observed L.O. "with his pants down to his knees getting up off a black female, unclothed from the waist down." Though the victim initially denied penetration, she later admitted to her sister that L.O. did penetrate her after he pushed her up against a wall, ripped off her pants, and pulled her shirt up to her neck. L.O. was convicted of criminal sexual contact and criminal restraint, and sentenced to a two-year term of probation, fined, and ordered to attend an alcohol treatment program.

In 1983, L.O. was charged with violating probation (VOP) by failing to report, failing to notify probation of a change of residence, leaving the State without the permission of his probation officer, and being arrested and charged with kidnapping and aggravated sexual contact. He was resentenced to a four-year term of incarceration, but on a motion for reconsideration the sentence was vacated, and the matter was held in abeyance pending the disposition of open charges. In 1984, L.O.'s probation was vacated without improvement. In 1985, L.O. was charged with kidnapping and sexual assault. He pled guilty to aggravated sexual assault, but later withdrew his plea and was acquitted after a jury trial. However, while awaiting sentencing prior to withdrawing his plea, on April 21, 1986, L.O. was evaluated at the ADTC by Kay E. Jackson, M.A., who concluded that L.O. fell "under the purview of the New Jersey Sex Offender Act" because he has little control over his antisocial behavior, his crimes are compulsive in nature, and there are indications he has psychosexual pathology. Jackson

noted in her report that L.O. "acknowledged that he has sexual difficulties, stemming from aggression, for which he needs help."

On June 3, 1988, at age thirty-four, L.O. was charged with the predicate offense, which included two counts of sexual assault, one count of aggravated assault, one count of attempted sexual assault, and two counts of criminal restraint for sexual attacks on two female acquaintances, A.S. and A.D., resulting from L.O. luring the victims into his home and then resorting to brute force to cut off the victims' air supply until they acquiesced. The cases were consolidated for trial, defendant was convicted of the offenses, and sentenced to state prison and a subsequent commitment at the ADTC. We reversed the conviction based on evidentiary rulings and deficient jury charges, and the Supreme Court affirmed the reversal.

L.O.'s retrial occurred on February 7, 1995, and he was convicted of two counts of sexual assault (vaginal and oral sex with two victims), one count of attempted sexual assault (incomplete vaginal sex leading to oral sex), two counts of criminal restraint, and one count of the lesser-included offense of simple assault. He was sentenced on May 15, 1995 to a thirty-year custodial term with a twelve-year parole disqualifier.

## II.

In January 2009, the State filed a petition for civil commitment pursuant to the SVPA. On February 4, 2009, a temporary order of commitment was entered. On July 20, 2010, a final commitment hearing was held before Judge James F. Mulvihill. At the hearing, Dr. Alberto M. Goldwaser, M.D., a psychiatrist,[2] and Dr. Rosemarie V. Stewart, Ph.D., a psychologist, testified on behalf of the State. L.O. testified on his own behalf.

On July 15, 2010, Dr. Goldwaser attempted to perform a clinical evaluation of L.O; however, he refused to be interviewed. Dr. Goldwaser, however, was able to formulate an independent conclusion, write a report, and testify based on his thorough review of L.O.'s complete discovery file and treatment records. His report identified the sources of information he relied on in evaluating L.O., which included: the psychiatric certificates of Drs. Marina Moshkovich and Anasuya Salem; a prison psychological evaluation; mental health parole evaluations; criminal justice records; a forensic psychological evaluation performed by Dr.

---

[2] "Dr. Goldwaser's direct examination is missing from the transcript. However, on March 28, 2012, the parties agreed to have the record reconstructed by incorporating Dr. Goldwaser's July 16, 2010 written report, and an order was entered that same day memorializing this agreement." *Id.* at *2.

Stewart; a forensic psychiatric evaluation performed by Dr. Pogos
H. Voskanian; and various STU records. Dr. Goldwaser detailed
L.O.'s sexual and non-sexual offenses, institutional infractions,
personal history, substance abuse history, actuarial risk
assessments, and psychological testing. He diagnosed L.O. with
paraphilia NOS (non-consent), cocaine dependency (in
institutional remission), alcohol abuse, and antisocial personality
disorder. He concluded that L.O.'s "sexual predator deviance is
deeply ingrained" and opined that "there is substantial clinical
evidence that [L.O.]'s conditions qualify him as having a mental
abnormality and a personality disorder that place[s] him at high
risk to engage in acts of sexual violence if he is not confined in a
secure facility for control, care, and treatment."

Dr. Stewart based her assessment on a two-hour interview of L.O.,
review of reports and evaluations prepared by other experts for
background information, statements made by L.O. in interviews,
his criminal history, and other documentation customarily relied on
by experts in her field, but she ultimately made an independent
assessment. She testified consistently with her report of August 19,
2009.

Dr. Stewart addressed L.O.'s extensive history of substance and
alcohol abuse. She testified that he described himself "as using
heavily while he was offending" and "high as heck" when he was
with the victims. She opined that the minimal amount of substance
abuse treatment L.O. received was insufficient to mitigate the risk
that substance abuse contributed to his potential for reoffending.

L.O. scored a twenty-four on the Hare Psychopathy Checklist
which reflects significant psychopathic traits, such as
manipulativeness, antisocial type behavior, lack of empathy and
compassion for other people, and not being restrained by
conscience in certain situations. Dr. Stewart asserted that L.O.'s
score reinforced her diagnosis of antisocial personality disorder.
She also scored him twice for the Static–99, and he scored a seven
on the first test and a six on the second, both falling in the high-
risk category of sexual recidivism.

Dr. Stewart testified that during her interview with L.O. they
talked about his offending history in detail, and he told her that "he
saw a pattern" and "how it led him toward aggression with females
and particularly sexual aggression with them." However, L.O.
believed he was at a very low risk of reoffending because "he had
a different moral base and a different value system." Dr. Stewart
disagreed based on L.O.'s history of sexual offending and
propensity toward violence. She noted that these factors are not
mitigated by any treatment and are actually exacerbated by L.O.'s
substance abuse and lack of supervision. She found another

exacerbating factor to be L.O.'s violation of supervisory requirements.

Dr. Stewart opined that L.O. suffers "from a mental abnormality or personality disorder that impacts him volitionally, emotionally or cognitively in such a way that it predisposes him to engage in acts of sexual violence." She made a provisional diagnosis of paraphilia NOS non consent[3] and diagnosed him with cocaine dependence, alcohol abuse, and antisocial personality disorder. She further opined that L.O. was highly likely to sexually reoffend in the foreseeable future unless confined in a facility. L.O. claimed that some of the statements attributed to him by Dr. Frank were inaccurate. L.O. testified that Dr. Stewart's report was also inaccurate because he did not violate probation. He explained that when he left the State his probation was over and his probation officer told him he did not have to show up. He denied that many of the criminal incidents occurred, minimized the charges, made excuses, or alleged it was his brother who was arrested. L.O. also claimed he had not been given proper sex offender treatment.

Judge Mulvihill rendered a comprehensive oral decision on July 22, 2010, which canvassed the procedural and documentary record and case law. He also outlined in detail his findings regarding the testimony and opinions of Drs. Goldwaser and Stewart, which he credited. However, he did not find L.O.'s testimony to be "credible in any way, shape or form[,]" explaining that L.O. "minimize[ed] the entire record" and "den[ied] that he spoke to people[,]" even though "[t]here's documentation who he spoke to." The judge found the State clearly and convincingly proved that L.O. has been convicted of sexual violent offenses, that he continues to suffer from mental abnormalities and personality disorders, and that he "has serious difficulty controlling sexually harmful behavior" and it is "highly likely he will re-offend if returned to the community." Judge Mulvihill entered an order the same date committing L.O. to the STU, with a review scheduled for July 14, 2011.

*In re Civil Commitment of L.O.*, No. A-6241-09T2, 2013 WL 1919573, at *1-4 (App. Div. May 10, 2013). On appeal, L.O. asserted the following arguments through counsel:

---

[3] "Dr. Stewart made a provisional diagnosis, giving L.O. the benefit of the doubt, because she believed 'the anti-social aspect of his character is so strong' and is 'part of a wider pattern of anti-sociality' since he 'hedonistically engage[s] in the opportunity when it presents itself and he won't take no for an answer.'" *Id.* at *3.

THE STATE FAILED TO PROVE BY CLEAR AND
CONVINCING EVIDENCE THAT L.O. WAS SUBJECT TO
SVP COMMITMENT [ ] BECAUSE THE STATE RELIED
UPON EXCESSIVE AMOUNTS OF HEARSAY AND
UNPROVEN ALLEGATIONS.

POINT II
THE COURT ERRED IN RELYING ON THE OPINIONS OF
DRS. GOLDWASER AND STEWART BECAUSE THESE
OPINIONS WERE BASED IN PART ON THE OPINIONS OF
NON–TESTIFYING EXPERTS

*Id.* at *4. Petitioner also asserted the following arguments pro se:

POINT I

NEW JERSEY['S] SEXUAL[LY] VIOLENT PREDATOR'S ACT
DEPRIVED APPELLANT OF HIS CONSTITUTIONAL RIGHT
UNDER THE EX POST FACTO CLAUSE, BECAUSE [THE]
SEXUAL[LY] VIOLENT PREDATOR[']S ACT IN PRACTICE
IS PUNITIVE.

POINT II

CIVILLY COMMITTING [ ] APPELLANT WAS PUNITIVE,
AFTER HE WAS SENTENCED TO [THE] ADULT
DIAGNOSTIC & TREATMENT CENTER FOR TREATMENT,
THEN TRANSFERRED TO GENERAL PRISON POPULATION
WHERE HE RECEIVED MINIMAL SEX OFFENDER
TREATMENT AND MAXED OUT ON 30 YEAR SENTENCE,
IN VIOLATION OF THE EX POST FACTO CLAUSE.

POINT III

TRIAL COURT ABUSED ITS DISCRETION BY RELYING ON
EXPERT STATEMENT THAT APPELLANT VIOLATED
PAROLE AND PROBATION ON SEVERAL OCCASIONS,
MAKING HIM A HIGH RISK TO RE–OFFEND WHEN PRE–
SENTENCE REPORT STATED THAT HE DID NOT VIOLATE
PAROLE OR PROBATION, DEPRIVING HIM OF DUE
PROVESS, IN VIOLATION OF THE 14TH AMENDMENT [OF
THE] U.S. CONSTITUTION.

POINT IV

FAILURE OF TRIAL COURT TO PROVIDE AND REVIEW
DISCOVERY WITH APPELLANT TO SECURE AN EXPERT
WITNESS IN HIS DEFENSE AND FAILURE TO OBTAIN
WITNESSES REQUESTED BY APPELLANT, DEPRIVED HIM
OF HIS CONSTITUTIONAL RIGHT TO EFFECTIVE

ASSISTANCE OF COUNSEL, IN VIOLATION OF THE 6TH
AND 14TH AMENDMENT[S] [OF THE] U.S. CONSTITUTION.

(A) DEFENSE COUNSEL'S FAILURE TO INVESTIGATE AND SECURE WITNESSES FOR TRIAL VIOLATED APPELLANT'S CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

(B) FAILURE OF DEFENSE COUNSEL TO PROCURE EXPERT WITNESS ON BEHALF OF APPELLANT[ ] DEPRIVED HIM OF HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

(C) FAILURE OF DEFENSE COUNSEL TO GIVE APPELLANT A COPY OF DR. KEY JACKSON AND DR. FRANK'S A.D.T.C. PSYCH EVALUATIONS BEFORE APPELLANT TOOK THE STAND TO TESTIFY AND DEFENSE COUNSEL'S INTRODUCTION OF THE REPORTS INTO EVIDENCE WAS INEFFECTIVE ASSISTANCE OF COUNSEL.

*Id.* at *4-5. The Appellate Division rejected his grounds for appeal and affirmed his civil commitment. *See Id. at* *8. The Supreme Court denied certification. *See In re Civil Commitment of L.O.*, 216 N.J. 4 (2013).

Petitioner submitted the instant Petition for habeas corpus to prison officials for filing on February 10, 2014. (ECF No. 1, Pet. at 11.) The matter was originally assigned to the Honorable Faith S. Hochberg. On April 23, 2014, Petitioner submitted an Amended Petition that raises the same issues he raised on appeal before the New Jersey Appellate Division. (ECF No. 5, Amended Petition at 6-9.) The matter was subsequently transferred to the undersigned. (ECF No. 8.) Respondents filed their Answer to the Amended Petition on November 30, 2015. (ECF No. 13.) Petitioner filed his Reply on January 29, 2016. (ECF No. 16.)

Petitioner also received a yearly review hearing in 2015; following the hearing, the state court entered judgment continuing Petitioner's commitment at the STU and requiring that

~~another review hearing be conducted on April 15, 2016.~~ [4] ~~(*See* Ex. M. to Respondent's Answer.)~~

Petitioner appealed that determination, contending that the State failed to prove by clear and convincing evidence that he suffers from a mental or emotional abnormality which may cause him to reoffend sexually, and that, if released, he is highly likely to commit more acts of sexual violence given his "advanced age," health problems and treatment effect. The Appellate Division affirmed the judgment of the trial court.[5] *In re Civil Commitment of L.O.*, No. A-5615-14T2, 2015 WL 7921246, at *1 (App. Div. Dec. 7, 2015).

## III.    **STANDARD OF REVIEW**

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus. The statute reads as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

---

[4] A person who has been involuntarily committed under the SVPA is entitled to annual review hearings to determine whether he or she remains in need of commitment despite treatment. N.J.S.A. 30:4–27.35; see also N.J.S.A. 30:4–27.32a.

[5] That review hearing is not a subject of the current petition, and the record before the Court does not reflect whether Petitioner has received additional yearly review hearings or has challenged the results of those hearings.

~~The Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") constrains the~~ federal court's power to disturb a state-court's order of civil commitment, and a federal court will reverse a state court's determination of a claim on the merits only if it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See Conover v. Main*, 601 F. App'x 112, 114 (3d Cir. 2015) (citing 28 U.S.C. § 2254(d)). The petitioner carries the burden of proof, and review under § 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits. *See Harrington v. Richter*, 131 S.Ct. 770, 785 (2011).

"[C]learly established law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of t[he Supreme Court's] decisions," as of the time of the relevant state-court decision. *White v. Woodall*, 134 S.Ct. 1697, 1702 (2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d) (1) if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." *Williams*, 529 U.S. at 405-06. Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." 529 U.S. at 413. With regard to 28 U.S.C. § 2254(d)(1), a federal court must confine its examination to evidence in the record. *See Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011).

Where a petitioner seeks habeas relief, pursuant to § 2254(d)(2), on the basis of an erroneous factual determination of the state court, two provisions of the AEDPA necessarily

apply. First, the AEDPA provides that "a determination of a factual issue made by a State court shall be presumed to be correct [and] [t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 29 U.S.C. § 2254(e)(1); *see Miller–El v. Dretke*, 545 U.S. 231, 240 (2005). Second, the AEDPA precludes habeas relief unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

A federal court may not grant a writ of habeas corpus under § 2254 unless the petitioner has "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To do so, a petitioner must "'fairly present' all federal claims to the highest state court before bringing them in federal court." *Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007) (citing *Stevens v. Delaware Corr. Ctr.*, 295 F.3d 361, 369 (3d Cir. 2002)). This requirement ensures that state courts "have 'an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights.'" *Id.* (citing *United States v. Bendolph*, 409 F.3d 155, 173 (3d Cir. 2005) (quoting *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981)).

Even when a petitioner properly exhausts a claim, however, a federal court may not grant habeas relief if the state court's decision rests on a violation of a state procedural rule. *See id.* (citing *Johnson v. Pinchak*, 392 F.3d 551, 556 (3d Cir. 2004). This procedural bar applies only when the state rule is "independent of the federal question [presented] and adequate to support the judgment." *Id.* at 365-66 (citing *Nara v. Frank*, 488 F.3d 187, 196, 199 (3d Cir. 2007); *see also Gray v. Netherland*, 518 U.S. 152 (1996), and *Coleman v. Thompson*, 501 U.S. 722 (1991)).

~~Finally, if a federal court determines that a claim has been defaulted, it may excuse the default~~ only upon a showing of "cause and prejudice" or a "fundamental miscarriage of justice." *Id.* at 366 (citing *Lines v. Larkins*, 208 F.3d 153, 166 (3d Cir. 2000)).

To the extent that Petitioner's constitutional claims are unexhausted and/or procedurally defaulted, a court can nevertheless deny them on the merits under 28 U.S.C. § 2254(b)(2). *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007) ("Here, because we will deny all of [petitioner's] claims on the merits, we need not address exhaustion"); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005) ("Under 28 U.S.C. § 2254(b)(2), we may reject claims on the merits even though they were not properly exhausted, and we take that approach here").

## IV.   ANALYSIS

### a. The New Jersey SVPA

The New Jersey SVPA, N.J.S.A. 30:4-27.24 et seq., provides for the custody, care and treatment of involuntarily committed persons who are deemed to be sexually violent predators ("SVP"). *See* N.J.S.A. 30:4-27.26. The New Jersey Department of Corrections ("DOC") operates the facilities designated for SVPs, N.J.S.A. 30:4-27.34(a); and the New Jersey Department of Human Services ("DHS") provides for their treatment. *See* N.J.S.A. 30:4-27.34(b).

The SVPA defines a SVP as:

> ... a person who has been convicted, adjudicated delinquent or found not guilty by reason of insanity for commission of a sexually violent offense, or has been charged with a sexually violent offense but found to be incompetent to stand trial, and suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment.

N.J.S.A. 30:4-27.26(b).

~~When it appears that a person may meet the criteria of a SVP, the "agency with~~ jurisdiction" must provide notice to the New Jersey Attorney General ninety (90) days, or as soon as practicable, before the anticipated release of a person who has been convicted of a sexually violent offense. *See N.J.S.A.* 30:4-27.27(a)(1). If the Attorney General determines that public safety warrants the involuntary civil commitment of a SVP, the Attorney General may initiate a court proceeding by presenting to a judge for immediate review the certification of two doctors, one of whom must be a psychiatrist, who have examined the person no more than three days before the petition for commitment. *See N.J.S.A.* 30:4-27.28; 30:4-27.26; *see also In the Matter of Commitments of M.G. and D.C.*, 331 N.J. Super. 365, 373, 751 A.2d 1101 (App. Div. 2000). Once these documents are received by the court, the court must determine whether there is probable cause to believe that the person is a SVP. *See N.J.S.A.* 30:4-27.28(f). If the court so finds, the court will issue an order authorizing temporary commitment to a secure facility designated for the care, control and treatment of SVPs pending a final hearing, and a final hearing date will be scheduled within twenty (20) days of the temporary commitment. *See N.J.S.A.* 30:4-27.28(f) and 30:4-27.29(a). The SVPA mandates that the person deemed to be a SVP shall not be released from confinement before the final hearing. *See N.J.S.A.* 30:4-27.28(f).

The person deemed to be a SVP and his/her counsel shall be provided with the following at least ten (10) days before the final hearing: (1) copies of the clinical certificates and supporting documents, (2) the temporary court order, and (3) a statement of the SVP's rights at the final hearing. *See N.J.S.A.* 30:4-27.30(a). Under the statute, the individual is afforded the following rights at his/her final hearing: (1) the right to be represented by counsel or, if indigent, by appointed counsel; (2) the right to be present at the court hearing unless the court determines that because of the individual's conduct at the court hearing the proceeding cannot reasonably

~~continue while the individual is present; (3) the right to present evidence; (4) the right to cross-~~
examine witnesses; and (5) the right to a hearing in camera. *See Greenfield v. Dep't of Corr.*,
No. CIV.A. 09-1969 JLL, 2011 WL 3203730, at *6 (D.N.J. July 27, 2011) (citing N.J.S.A. 30:4–
27.31).

At the final hearing, the court must find by clear and convincing evidence that the SVP is
in need of continued involuntary commitment to issue an order of involuntary commitment. *See*
N.J.S.A. 30:4-27.32(a). The psychiatrist on the SVP's treatment team who has conducted a
personal examination of the SVP within five (5) days of the final hearing, shall testify at the
hearing as to the clinical basis for involuntary commitment as a SVP. *See* N.J.S.A. 30:4-
27.30(b). Other members of the person's treatment team and other witnesses with relevant
information, offered by the SVP or by the Attorney General, are also permitted to testify at the
final hearing. *See id.*

Persons committed under the SVPA also receive annual review hearings. *See N.J.S.A.*
30:4-27.35. A SVP may be released from involuntary civil commitment upon recommendation
of the DHS or by the SVP's own petition for discharge. *See* N.J.S.A. 30:4-27.36.

### b. Respondents' Argument that the Petition is Moot

Respondents first argue that Petition has been rendered moot by Petitioner's subsequent
review hearing in 2015. At least one other Court in this district has rejected this same argument
finding that although "the original one-year term of civil commitment under the SVPA has
expired, [Petitioner's] Petition challenging his commitment under the SVPA is not rendered
moot because his subsequent commitment order under the SVPA depends largely on the legality
of the original SVPA commitment." *Jennings v. Rogers*, No. CIV. A. 06-5025 JLL, 2008 WL
2020175, at *9 (D.N.J. May 2, 2008) (citing *Rose v. Mayberg*, 454 F.3d 958, 960, n. 1 (9th Cir.

2006), ~~*cert. denied*, 127 S.Ct. 1271 (2007). Judge Linares concluded that "even if each SVPA~~

re-commitment proceeding is a separate and distinct civil action, as Respondents here contend,

the federal court may still address a habeas petition challenging the first SVPA commitment in

order to ensure that the claim is fully litigated." *Id.* (citing *Hubbart v. Knapp*, 379 F.3d 773,

777-78 (9th Cir. 2004), *cert. denied*, 543 U.S. 1071 (2005). The Court is not persuaded that

Petitioner's claims have been mooted by his subsequent commitment order and will therefore

review the claims raised in the Petition.[6]

### c. Substantive Grounds for Relief

#### 1. Admission of Hearsay and Unproven/Erroneous Evidence (Grounds One, Two, & Five)

In Grounds One and Two of his Petition, which were presented by his counsel below,

Petitioner argues that State failed to prove by clear and convincing evidence that Petitioner is

subject to civil commitment because the State relied on excessive amounts of hearsay and

unproven evidence. Petitioner further contends that the court erred in relying on the opinions of

Dr. Goldwater and Dr. Stewart because their opinions were based in part on the opinions of non-

testifying experts. In Ground Five of his Petition, Petitioner also argues that the trial court

violated his right to due process by relying on the state expert's erroneous statement that

Petitioner violated parole and probation, when his presentence report stated that he did not

violate parole and probation.

---

[6] The Court finds it troubling that Respondents' brief does not address all habeas claims raised in the Petition, as required by the Court's Order to Answer. Even if Respondents believed that their mootness argument carried the day, which it does not, they are obligated under the Court's Order to provide adequate briefing on all issues presented by the Petition, and are not permitted to pick and choose which issues to address. Respondents argue in passing that the Petition should be denied because Petitioner is seeking a "*de novo* review" of the Appellate Division's decision, but fail to explain how each ground for relief fails as a federal habeas claim, leaving the Court to perform this work.

Appellant . . . primarily contends the State failed to produce competent evidence that he currently suffers from a mental abnormality or personality disorder that makes him highly likely to engage in future acts of sexual violence if released from the STU. N.J.S.A. 30:4–27.26(b). Specifically, he contends through counsel that the opinions of the State's experts were deficient because they were non-treating doctors and they relied heavily on hearsay reports of other non-treating examiners, particularly the ADTC evaluator.

We reject L.O.'s arguments as without merit. Judge Mulvihill's findings are well-documented and supported by the record as to all the statutory prongs. L.O. consented only to be interviewed by Dr. Stewart, and both experts diagnosed L.O. based on their review of numerous and appropriate sources of information routinely relied on by experts in the field. N.J.R.E. 703. Nothing in our opinion in *In re Commitment of E.S.T.*, 371 N.J. Super. 562 (App. Div. 2004), prohibits an expert from relying on a statement made by a defendant to an ADTC evaluator. Instead, our decision prohibits the State from relying on forensic expert opinions from psychiatrists who never treated the inmate, but who merely signed the clinical certificates that led to the initial commitment order. *Id.* at 573. We held that "fundamental fairness" prohibits the State from eliciting testimony from a treating psychiatrist about the hearsay opinion of a forensic expert who does not testify. *Id.* at 575.When we held in E.S.T. that the opinion of a non-testifying expert cannot be "bootstrapped into evidence" in that fashion, *ibid.*, we specifically held otherwise concerning hearsay evidence contained in "pre-sentence reports and other investigative materials." *Id.* at 576. We concluded that hearsay opinion from those sources was indeed admissible "but only as a basis for the expert's opinion," and not as "substantive evidence." *Ibid.* We consider an ADTC report to be the equivalent of a pre-sentence report for purposes of hearsay analysis. *See In re Civil Commitment of A.X.D[.]*, 370 N.J. Super. 198, 201–02 (App. Div. 2004) (holding that experts are allowed to rely on STU reports at a SVPA commitment hearing if they ordinarily relied on such information to assist them in reaching a diagnosis). Thus the State's experts were legally entitled to rely on any statements that L.O. made to Dr. Frank as a basis for forming their opinion.

L.O. chose not to be interviewed by Dr. Goldwaser and thus cannot now complain about his lack of clinical evaluation. Dr. Stewart interviewed L.O. and performed objective tests. The similar diagnoses and conclusions of both experts, who the trial judge expressly credited, were independently arrived at by each expert

~~based on appropriate past and present data.~~ Contrary to L.O.'s assertion, *In re Civil Commitment of G.G.N.*, 372 N.J. Super. 42, 58–59 (App. Div. 2004) is factually inapposite, as the experts here did not rely solely on outdated ADTC hearsay or give excessive weight to the original crimes in finding a high likelihood to currently re-offend. L.O.'s issue with the State's experts relying on dismissed charges is without merit. Dr. Stewart testified that she looks at both charges and convictions, but the "charges are not weighed in the same degree as convictions." She also stated that her opinion regarding L.O. would have remained the same even if she only considered his convictions. Moreover, the Court has balanced an individual's due process rights and right to fundamental fairness with the community's right to protect itself against the risk the individual may commit another sexual offense, and permitted non-conviction offenses to be considered. *In re C.A.*, 146 N.J . 71, 109–10 (1996).

. . . .

L.O. disobeyed the terms of his probation, even if technically the VOP was ultimately dismissed. Regardless, Dr. Stewart only found his VOP to be an exacerbating factor, and not a significant basis for her opinion, so L.O.'s claim of error on this point is without merit.

*In re Civil Commitment of L.O.*, 2013 WL 1919573, at *6-7.

From the outset, it appears that Petitioner's hearsay challenge was not raised to the state courts as a federal claim. Petitioner's Appellate Brief relies <u>entirely</u> on the New Jersey Rules of Evidence and New Jersey state law. (*See* ECF No. 13-6, Petitioner's Appellate Brief at 8-10, 14-16, attached as Ex. D to Respondent's Answer.) The Appellate Division, in turn, addressed the issue in terms of state law. "Where Petitioner has alleged no specific violation of federal law, or has raised no federal constitutional issue, his evidentiary argument is not within the province of the [federal habeas court] to address." *Bagarozy v. Goodwin*, No. CIVA 08-0468 SRC, 2008 WL 4416455, at *14 (D.N.J. Sept. 23, 2008) (citing 28 U.S.C. § 2254(d)(2); *McCandless v. Vaughn*, 172 F.3d 255, 262 (3d Cir. 1999) (holding that petitioner's failure to raise federal constitutional issues in state court, coupled with failure to cite to federal cases or perform a constitutional analysis precluded hearsay challenge on habeas review).

~~To the extent Petitioner contends that the admission of hearsay violates his due process~~

rights, "the Due Process Clause does not permit the federal courts to engage in a finely tuned

review of the wisdom of state evidentiary rules." *Marshall v. Lonberger*, 459 U.S. 422, 438 n.6

(1983). "A federal habeas court ... cannot decide whether the evidence in question was properly

allowed under the state law of evidence." *Keller v. Larkins*, 251 F.3d 408, 416 n. 2 (3d Cir.

2001). As explained by another Court in this District, "[a]lthough New Jersey courts have held

that the Due Process Clause limits the use of hearsay in sexually violent predator commitment

hearings, this Court is not aware of any Supreme Court case clearly establishing that the

admission of hearsay in a sexually violent predator commitment hearing constitutes a violation

of due process[.]" *Baldwin v. Rogers*, No. CIV. 07-1741 (PGS), 2009 WL 1228432, at *7

(D.N.J. May 1, 2009).

   To the extent that Petitioner asserts that the admission of hearsay – and specifically the

expert's reliance on non-testifying experts – violated his rights under the Confrontation Clause,

that claim does not warrant habeas relief. The Confrontation Clause provides: "In all criminal

prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against

him." U.S. Const. amend. VI. Courts in this District have held that the Sixth Amendment right

of confrontation, and its attendant limitations on the use of hearsay evidence, does not attach to

civil proceedings such as the civil commitment proceedings under the SVPA. *See Greenfield*,

2011 WL 3203730, at *14; *see also Talbert v. Goodwin*, No. 07–4101, 2009 WL 223710 (D.N.J.

Jan. 29, 2009); *Baldwin v. Rogers*, No. CIV. 07-1741 (PGS), 2009 WL 1228432, at *7 (D.N.J.

May 1, 2009); *Hasher v. Goodwin*, No. CIV.A. 08-5787 JLL, 2010 WL 5392702, at *9 (D.N.J.

Dec. 21, 2010). Nor does any Supreme Court case hold that the Due Process Clause prohibits

the use of hearsay testimony in civil commitment proceedings. *Id.*; *Baldwin*, 2009 WL 1228432,

~~at *7 ([T]his Court is not aware of any Supreme Court case clearly establishing that the~~

admission of hearsay in a sexually violent predator commitment hearing constitutes a violation

of due process); *see also Carty v. Nelson*, 426 F.3d 1064, 1073 (9th Cir. 2005); *In re Civil*

*Commitment of T.J.N*, 390 N.J. Super. 218, 225 (App. Div. 2007).

The Appellate Division likewise did not unreasonably apply federal law in rejecting

Petitioner's claim that the State's experts' improperly relied on dismissed charges and unproven

allegations. Petitioner, in his Appellate Brief, appears to argue that the reliance on dismissed

charges and unproven allegations violates *Blakely v. Washington*, 542 U.S. 296 (2004). (ECF

No. 13-8, Appellate Brief at 11-12.) There, a petitioner entered a guilty plea and was sentenced

to more than three years above the 53–month statutory maximum of the standard range because

he had acted with "deliberate cruelty"; however the facts supporting that finding were neither

admitted by petitioner nor found by a jury. *Id.* at 303. Applying the rule expressed in *Apprendi*

*v. New Jersey*, 530 U.S. 466, 490 (2000), the Supreme Court held that this procedure violated

petitioner's Sixth Amendment right to trial by jury. *Id.* at 305. The Third Circuit, however, has

held that "the Constitution does not demand that a jury trial be provided before an individual is

involuntarily committed by the state as a sexually dangerous person." *Aruanno v. Hayman*, 384

F. App'x 144, 152 (3d Cir. 2010). As such, *Blakely* is inapposite, and the Court has found no

authority to suggest that the New Jersey courts unreasonably applied federal law by considering

dismissed charges or unproven allegations during Petitioner's civil commitment proceedings.

Furthermore, as explained by the Appellate Division, Dr. Stewart testified that although she

considered both charges and convictions, the "charges are not weighed in the same degree as

convictions" and also stated that her opinion regarding Petitioner would have remained the same

even if she only considered his convictions.

~~Finally, the Court finds that the Appellate Division did not unreasonably apply federal~~ law in rejecting Petitioner's due process claim regarding the admission of erroneous testimony from the State's expert that Petitioner violated his parole/probation on several occasions. The Court defers to the Appellate Division's factual finding that Petitioner disobeyed the terms of his probation, even if technically the VOP was ultimately dismissed, and also agrees that any alleged error in admitting the erroneous information was harmless, as Dr. Stewart only found his VOP to be an exacerbating factor, and not a significant basis for her opinion.

In sum, the New Jersey courts did not unreasonably apply federal law in rejecting Petitioner's challenges to the evidence presented at his commitment hearing, and the Court's review the relevant record shows that there was clear and convincing evidence to commit Petitioner under the New Jersey SVPA.[7] The Court will therefore deny habeas relief on Grounds One, Two, and Five of the Petition.[8]

---

[7] "To warrant commitment of a person pursuant to the SVPA, the State must prove by clear and convincing evidence that the individual suffers from a mental abnormality or personality disorder that affects his 'ability to control his or her sexually harmful conduct.'" *Greenfield*, 2011 WL 3203730, at *12 (citing *In re Commitment of W.Z.*, 173 N.J. 109, 127 (2002)).

[8] Nor does Petitioner establish that the state courts' rulings were based on an unreasonable application of the facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(2). To the extent Petitioner is attacking the factual determinations of the trial court, he can only succeed if he can present clear and convincing evidence which would rebut the presumption that the state court's factual conclusions were correct, *see* 28 U.S.C. § 2254(e)(1), which he has not done. *See also Shelton v. Main*, No. CIV.A. 14-1635 JLL, 2015 WL 4548813, at *7 (D.N.J. July 27, 2015) (explaining same).

### 2. Civil Commitment Violates Ex Post Facto Clause and is Punitive as Applied (Grounds Three and Four)

Petitioner next argues in Grounds Three and Four of the Petition that his civil

commitment violates the ex post facto clause and is punitive as applied. The Appellate Division

rejected these claims as follows:

> We turn now to L.O.'s pro se arguments. We find no ex post
> violation of the SVPA statute as applied. The Court has
> "recognized that by utilizing confinement as part of treatment, the
> SVPA has some punitive impact, and ... this aspect of the statute is
> 'onerous.'" W.X.C., *supra*, 204 N.J. at 189. However, the SVPA
> does not violate the *ex post facto* clause since it is "simply an
> 'inevitable consequence of the regulatory provisions.'" *Ibid.*
> Moreover, "[i]n light of the clear regulatory goals that our
> Legislature sought to achieve through the SVPA, the choice to
> include confinement as part of the means through which those
> goals are achieved does not transform the statute automatically into
> one that is punitive." *Ibid.*; *see J.M.B., supra*, 197 N.J. at 601
> (reiterating that the SVPA is remedial and not punitive). L.O.'s
> related argument that the Department of Corrections and the Parole
> Board deliberately delayed adequate treatment that would have
> prevented him from being civilly committed, which deprived him
> of his right not to be punished in violation of the ex post facto
> clause, is similarly without merit.

*In re Civil Commitment of L.O.*, 2013 WL 1919573, at *7.

Although the New Jersey Appellate Division relied on state law in rejecting Petitioner's

ex post facto challenge, its reasoning is entirely consistent with federal law. The ex post facto

clause "applies to a statute or policy change which 'alters the definition of criminal conduct or

increases the penalty by which a crime is punishable.'" *Richardson v. Penn. Bd. of Probation &

Parole*, 423 F.3d 282, 287 (3d Cir. 2005) (quoting *Calif. Dep't of Corr. v. Morales*, 514 U.S.

499, 506 n. 3 (1995)); U.S. Const. art. I, § 10. The Supreme Court has held that the ex post facto

clause applies only to penal statutes. *See Kansas v. Hendricks*, 521 U.S. 346, 370–71 (1997); *see

also E.B. v. Verniero*, 119 F.3d 1077, 1092 (3d Cir.), *reh'g en banc denied*, 127 F.3d 298 (3d Cir.

1997), *cert. denied*, 522 U.S. 1109 (1998); *Aruanno v. Goodwin*, No. CIV.A. 07-5205 KSH,

~~2013 WL 3821474, at *8 (D.N.J. July 22, 2013) (explaining same).~~ The Third Circuit has held

that facial challenges to the constitutionality of New Jersey's SVPA statute are barred by

*Hendricks.* *See Conover v. Main*, 601 F. App'x 112, 114 (3d Cir. 2015). Likewise, the Third

Circuit has held that *Seling v. Young*, 531 U.S. 250, 121 S.Ct. 727 (2001), bars Petitioner from

arguing that the statute is unconstitutionally punitive "as applied[.]"[9] *See id.*

Because the Appellate Division did not unreasonably apply federal law in rejecting

Petitioner's ex post facto claim and the related "punitive as applied" claim, the Court will deny

habeas relief on Grounds Three and Four.

### 3. Ineffective Assistance of Counsel Claims (Grounds 6-9)

Petitioner's remaining claims allege that he received ineffective assistance of counsel in

his civil commitment hearing. As noted above, an SVP is not permitted to appear at the hearing

without counsel, and he will be appointed counsel if indigent. *See* N.J.S.A. 30:4-27.29(c). The

Court assumes without deciding that the Due Process Clause entitles Petitioner to the effective

assistance of counsel during his review hearings and appeal, *see, e.g., Greenfield v. Dep't of*

*Corr.*, No. 09-1969, 2011 WL 3203730 at *7-9 (D.N.J. July 27, 2011) (the Sixth Amendment

does not apply to civil commitment hearings, but the Due Process Clause of the Fourteenth

---

[9] Finally, to the extent Petitioner contends that the denial of sex offender treatment violates the
Eighth Amendment, his claim fails on the merits, as explained by the Third Circuit:

> Because the SVPA is not "punitive" in nature, "the law is not a
> 'cruel and unusual punishment' in violation of the Eighth
> Amendment." *Doe v. Miller*, 405 F.3d 700, 723 n. 6 (8th
> Cir.2005). Likewise, a "'punitive as applied' argument is
> foreclosed by *Seling*." *Hydrick v. Hunter*, 500 F.3d 978 (9th Cir.
> 2007), vacated on other grounds by 556 U.S. 1256, 129 S.Ct. 2431,
> 174 L.Ed.2d 226 (2009). [Petitioner's] Eighth Amendment claim
> therefore fails on the merits.

*Conover*, 601 F. App'x at 115 n.3 (finding that Court need not reach issue of exhaustion or
procedural default as it rejected claim on the merits).

~~Amendment may entitle a civil committee subject to the SVPA to effective counsel);~~ *Aruanno v.*

*Yates*, No. CV 15-7405 (JLL), 2016 WL 4951047, at *8 (D.N.J. Sept. 14, 2016) (same),

*certificate of appealability denied sub nom.*, JOSEPH ARUANNO v. ADMINISTRATOR

ADULT DIAGNOSTIC, ET AL (Oct. 20, 2016). The Court also assumes that the standard set

forth in *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984),

governs such ineffective assistance of counsel claims. *See Greenfield*, 2011 WL 3203730, at *9.

The Appellate Division rejected Petitioner's ineffective assistance of counsel claims as

follows:

> L.O. next contends he was denied the effective assistance of
> counsel. The test for ineffective assistance of counsel was
> formulated in *Strickland v. Washington*, 466 U.S. 668, 690–95,
> 104 S.Ct. 2052, 2066–68, 80 L. Ed.2d 674, 695–98 (1984), and
> adopted by our Supreme Court in *State v. Fritz*, 105 N.J. 42
> (1987). The first prong requires a showing that counsel's
> performance was deficient in that counsel committed errors so
> serious that counsel was not functioning effectively as guaranteed
> by the Sixth Amendment to the United States Constitution, and
> under the second prong, it must be shown that the deficient
> performance prejudiced the party claiming ineffective assistance.
> *Strickland*, supra, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L. Ed.2d
> at 698. Courts grant a high degree of deference in evaluating the
> performance of counsel and employ a "strong presumption that
> counsel's conduct falls within the wide range of reasonable
> professional assistance." *Fritz*, supra, 105 N.J. at 52. The person
> asserting ineffective assistance must overcome the "presumption
> that counsel engaged in 'the exercise of reasonable professional
> judgment.'" *State v. Oglesby*, 122 N.J. 522, 538 (1991) (Handler,
> J., concurring) (quoting *Strickland*, supra, 466 U.S. at 690, 104
> S.Ct. at 2066, 80 L. Ed.2d at 695). L.O. claims his attorney failed
> to obtain witnesses at trial who would testify that he successfully
> participated in the following treatment programs: behavior
> modification; thinking for a change; anger management; alcohol
> and drug abuse counseling; one on one sex offender treatment; and
> the star program for release. However, L.O. fails to explain the
> nature of these programs and has provided no certifications or
> affidavits from these potential witnesses describing what they
> would have said. We cannot assume that if they were called as
> witnesses, they would have provided favorable testimony. *See*

> *State v. Cummings*, 321 N.J. Super. 154, 170 (App. Div.), ~~*certif. denied*, 162 N.J. 199 (1999)~~ (holding an appellant who alleges ineffective assistance of counsel must proffer facts sufficient to demonstrate counsel's alleged substandard performance). Accordingly, even if counsel were deficient in this regard, L.O. fails to satisfy the second *Strickland* prong of prejudice.
>
> L.O. further contends that lack of an expert witness deprived him of a defense in violation of his constitutional rights to effective assistance of counsel. He states that an expert could have explained the effects of aging on sex offenders and whether he could be released under certain conditions after being committed. L.O.'s attorney cross-examined Dr. Stewart about three different studies and whether there was a relationship between age and recidivism. We may not second-guess counsel's tactical decision to address this issue by cross-examination rather than presenting his own expert. Moreover, L.O. again has produced no report, certification, or affidavit from a potential expert who would have testified that L.O. was at a low risk to reoffend, that his age minimizes his likelihood of recidivism, and under what conditions it would be safe for him to be released. It is sheer conjecture that such an expert witness exists. L.O.'s remaining claims as to deficient performance are without sufficient merit to discuss. R. 2:11–3(e)(1)(E).

*In re Civil Commitment of L.O.*, 2013 WL 1919573, at *7-8.

Here, the Appellate Division did not unreasonably apply federal law in determining that

Petitioner failed to state a claim under *Strickland*. To make out a claim under *Strickland*, a

petitioner must first show that "counsel's performance was deficient. This requires [the petitioner

to show] that counsel made errors so serious that counsel was not functioning as the 'counsel'

guaranteed by the Sixth Amendment." 466 U.S. at 687; *see also United States v. Shedrick*, 493

F.3d 292, 299 (3d Cir. 2007). To succeed on an ineffective assistance claim, a petitioner must

also show that counsel's allegedly deficient performance prejudiced his defense such that the

petitioner was "deprive[d] of a fair trial . . . whose result is reliable." *Strickland*, 466 U.S. at

687; *Shedrick*, 493 F.3d at 299. In evaluating whether counsel was deficient, the "proper

standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*,

395 F.3d 92, 102 (3d Cir. 2005).

~~Even where a petitioner is able to show that counsel's representation was deficient, the~~
petitioner must still affirmatively demonstrate that counsel's deficient performance prejudiced

the petitioner's defense. *Id.* at 692-93. "It is not enough for the defendant to show that the errors

had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693.

The petitioner must demonstrate that "there is a reasonable probability, but for counsel's

unprofessional errors, the result of the proceeding would have been different. A reasonable

probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see*

*also Shedrick*, 493 F.3d at 299. "Because failure to satisfy either prong defeats an ineffective

assistance claim, and because it is preferable to avoid passing judgment on counsel's

performance when possible, [*Strickland*, 466 U.S. at 697-98]," courts should address the

prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308

F.3d 308, 315 (3d Cir. 2002); *Judge v. United States*, 119 F. Supp. 3d 270, 280-81 (D.N.J. 2015).

Finally, when a federal habeas petition under § 2254 is based upon an ineffective

assistance of counsel claim, "[t]he pivotal question is whether the state court's application of the

Strickland standard was unreasonable," which "is different from asking whether defense

counsel's performance fell below *Strickland's* standard." *Grant v. Lockett*, 709 F.3d 224, 232 (3d

Cir. 2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). For purposes of §

2254(d)(1), "an unreasonable application of federal law is different from an incorrect application

of federal law." *Id.* (internal quotation marks omitted) (emphases in original). "A state court

must be granted a deference and latitude that are not in operation when the case involves [direct]

review under the *Strickland* standard itself." *Id.* Federal habeas review of ineffective assistance

of counsel claims is thus "doubly deferential." *Id.* (quoting *Pinholster*, 131 S.Ct. at 1403).

Federal habeas courts must "take a highly deferential look at counsel's performance" under

*Strickland,* "through the deferential lens of § 2254(d)." *Id.* (internal quotation marks and citations omitted).

Here, the Court finds that the Appellate Division did not unreasonably apply federal law in determining that Petitioner failed to establish the prejudice prong of *Strickland* with respect to his claims that his attorney (1) failed to secure witnesses who could testify that Petitioner's completion of certain treatment programs made him less likely to reoffend and (2) failed to call an expert witness to testify that Petitioner's aging would make him less likely to offend, as Petitioner did not provide sufficient evidence to establish a prima facie case that he suffered prejudice.

Likewise, the Court finds that the Appellate Division did not unreasonably apply federal law when it cited R. 2:11–3(e)(1)(E) and rejected Petitioner's remaining claim that his attorney was ineffective for failing to give Petitioner full copies of the psychiatric evaluations performed by Dr. Jackson and Dr. Franks. To the extent his counsel erred, the failure was not so serious to suggest that his counsel was not functioning as counsel. Furthermore, Petitioner has not provided any authority for the proposition that his attorney was required to provide him with full copies of these evaluations; absent such authority, his attorney could not have been deficient in failing to procure them for Petitioner.

Because the Appellate Division did not unreasonably apply *Strickland* in denying Petitioner's ineffective assistance of counsel claims, the Court will deny habeas relief on Grounds Six, Seven, Eight, and Nine of the Petition.

### d. The Court will Deny a Certificate of Appealability

Pursuant to 28 U.S.C. §2253(c), a petitioner may not appeal from a final order in a habeas proceeding unless he has "made a substantial showing of the denial of a constitutional right." "A

petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). For the reasons expressed above, jurists of reason could not disagree that Petitioner's claims are lacking in merit. Therefore, no certificate of appealability will issue pursuant to 28 U.S.C. § 2253(c)(1)(B). *See* Fed. R. App. P. 22(b)(1); 3d Cir. L.A.R. 22.2.

## V.     CONCLUSION

For the reasons expressed in this Opinion, the Court denies the Petition and denies a certificate of appealability. An appropriate Order follows.

Madeline Cox Arleo, U.S.D.J.

Date: _____, 2017